## Brown's Appeal.

1. It is within the discretion of the court after having decreed a private sale under the Act of 1853, to open the decree and receive a more favorable proposition for the estate before proceedings under the order have been consummated.

2. This, after an investigation by an auditor and the assent to the decree by all parties interested has been obtained.

3. The decree in its nature is interlocutory and the proceedings are *in fieri* until the sale be reported to the court, approved and the deed acknowledged.

4. The court should not set aside the order without good and sufficient reasons affecting the estate and only upon reimbursing expenses to the purchaser.

5. Hamilton's Estate, 1 P. F. Smith, approved.

| 68 | 53 |
|---|---|
| 192 | 461 |

| 68 | 53 |
|---|---|
| f 28 SC | ³147 |

| 68 | 53 |
|---|---|
| f221 | ³134 |

March 1st 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Appeal from the Orphans' Court of *Philadelphia:* No. 278, to January Term 1870.

The facts in this case are the following:—

About the 23d of December 1868, Joseph Chew the elder died, having made his will, which was duly proved, and by which he gave the residue of his estate to his son Joseph Chew, Jr., and J. G. Brinckle, in trust, amongst other things to pay the income

in the proportions mentioned to certain children and grandchildren during their lives, and upon the death of any of the life beneficiaries to pay the principal sum to the children of such decedent. He also authorized his trustees to sell his real estate when in their judgment it should be for the interest of his estate. He appointed the trustees executors of his will. Letters testamentary were granted to Joseph Chew, Jr., alone, Mr. Brinckle having renounced both as executor and trustee.

On the 2d of October 1869, the petition of Joseph Chew, Jr., the executor and all the beneficiaries, present and remote, under the will, the minors by their guardians, was presented to the Orphans' Court, setting out as above; and further that the testator died seised of certain real estate in Philadelphia, which was subject to a ground-rent of $636 per annum, which Joseph Chew, Jr., as executor and trustee, had agreed to sell to Benjamin H. Brown for $5250, subject to the ground-rent, provided authority to make such sale should be granted to him by the Orphans' Court; that the real estate was in a dilapidated condition and would require a large outlay of money to make it tenantable; that the price was a full price, and greater than could be obtained at public sale. They prayed the court to authorize the trustee to make the sale as aforesaid to Brown.

The petition was referred to an auditor. On the coming in and confirmation of his report, on the 16th of October 1869, the court authorized the trustee to sell the real estate to Brown at private sale for the price, &c., as set out in the petition.

On the 6th of November 1869, the trustee presented a petition to the Orphans' Court, reciting the foregoing proceedings, and setting forth that nothing further had been done under the order, and that none of the purchase-money had been paid; that his cestuis que trust had notified him that one C. M. Whiting had offered $6400 for the premises, and that Whiting had also made the offer in writing to the petitioner; he prayed that the order to sell might be vacated unless Brown would be willing to give the same price. Accompanying the petition was the notice to the trustee referred to in the petition, signed by a number of the cestuis que trust, notifying him not to make a deed to Brown until the further order of the court, as Whiting had offered $1150 more than he; and requesting the trustee to petition the court to vacate the order of sale to Brown.

Brown filed an answer to the petition, in which he set out the original negotiation and contract with the trustee; he further represented that one Crooker held at the time of the contract a lease of the premises which he, Brown, then agreed to purchase for $1000, solely to "obtain the title together with the possession of the property;" that an order was drawn on him by Crooker in favor of the trustee for $262.50 for rent of the premises due

[Brown's Appeal.]

July 1st 1869, which order was still in the possession of the trustee; that upon the faith of the order of sale and before notice of any dissatisfaction, he engaged a conveyancer, whose bill was $35, to prepare the necessary papers, and had paid Crooker $125 on account of the purchase of the lease; that he had been obliged in consequence of these proceedings to employ counsel, whose fees would not be less than $50; that he was unwilling to add anything to the price he had agreed to give for the property, &c.

After argument, the Orphans' Court, December 14th 1869, decreed, "that the order heretofore made in the premises, to wit, on the 16th day of October last past, be vacated upon the said Joseph Chew, trustee aforesaid, paying to the said Benjamin H. Brown, the sum of $1286.50, in case the said Benjamin H. Brown shall elect to convey and assign to him, the said trustee, the lease or unexpired term of said premises so purchased by him, the said Benjamin H. Brown, of John M. Crooker, and shall the said Benjamin H. Brown so elect, the said trustee shall have the option of returning to the said Benjamin H. Brown the acceptance of him, the said Benjamin H. Brown, for $262.50, given to the said trustee on account of back rent, and upon his doing so, shall be allowed a credit to that amount on account of said $1286.50. But in case the said Benjamin H. Brown shall refuse to elect so to assign and convey the said lease or unexpired term to the said trustee, then the said order, &c., shall become vacated upon the said trustee paying to the said Benjamin H. Brown $86.50, liability he has incurred under said decree. And thereupon the said trustees have leave to sell the said premises to the said Chester M. Whiting for the price and upon the terms proposed by the said Whiting. And in case the said trustee shall not comply on his part with this decree within twenty days hereafter, the said order of October 16th last past in the premises shall stand ratified and confirmed."

Brown appealed to the Supreme Court from this decree, and assigned it for error.

*G. W. Thorn*, for appellant.—In Pennsylvania a court does not set aside a sale made under its own process on the sole ground of inadequacy of price: Carson's Sale, 6 Watts 140.

The sale to the appellant was, in some sense, a private contract. The testamentary trustee had power under the will to sell, and did sell, and the court, acting on the request of all the parties beneficially interested, did not only approve the contract, but by its decree ordered the sale to be made to the appellant: Silverthorn v. McKinster, 2 Jones 67; Coles v. Trecothick, 9 Ves. 234; Livingston v. Byrne, 11 Johns. 566; White v. Damon, 7 Ves. 30; Burrowes v. Locke, 10 Id. 470.

Before confirmation the biddings were usually opened on an

[Brown's Appeal.]

advance; but the rule now seems to be not to allow it on a mere advance after confirmation: Hoffman's Masters in Chancery 223; Collier *v.* Whipple, 13 Wend. 224; Watson *v.* Birch, 2 Ves. Jr. 51; Williamson *v.* Dale, 3 Johns. Ch. 292; 2 Seton on Decrees 1204, 5; Ware *v.* Watson, 7 De Gex, M. & G. 739.

*A. Briggs,* for appellee.

The opinion of the court was delivered, May 8th 1871, by

Thompson, C. J.—We think it very clearly within the discretion of the Orphans' Court, when it has decreed a private sale of real property under the Act of 18th April 1853, even after investigation by an auditor as to the terms proposed, and even where the assent of heirs and guardians has been obtained for the proposed sale, to open the decree, and receive a more favorable proposition for the estate, before proceedings under the order have been consummated. This is what was done in this case. Nothing had been done to consummate the first order, when a better offer for the property was made by another party, and the testamentary trustee, heirs and guardians, prayed the court to vacate the first order and allow a sale in accordance with the last proposition. In answer to the application made by the appellant, no sufficient reasons were shown to withhold the exercise of this discretionary power in the matter, and a new order was accordingly made, authorizing the acceptance of the increased bid on the terms of reimbursing the appellant for expenses incurred under the expectation of becoming the purchaser. This was proper. The first decree was in its nature interlocutory, for the Act of 1853 requires the sale to be reported to the court, approved, and the deed acknowledged before it. The proceedings were therefore *in fieri* until all this was done. The court ought not, we agree, to set aside an order of sale without good and sufficient reasons affecting the estate; and then only on reimbursing expenses to the first provisional or proposed purchaser. It is complained by the appellant that this has not been done in this case; but we have no testimony on the subject to sustain the complaint. The answer of the appellant to the petition to vacate the first order is not sufficient to establish the complaint, and that is all we have. The power of the Orphans' Court over sales is well defined in Hamilton's Estate, 1 P. F. Smith 58. At present we need not cite other authorities.

> The proceedings of the Orphans' Court are affirmed, and the appeal is dismissed at the costs of the appellant.